Mark R. CASS, Appellant,

v.

The STATE of Texas, Appellee.

No. 68488.

Court of Criminal Appeals of Texas,
En Banc.

July 18, 1984.

Rehearing Denied Oct. 24, 1984.

Sam R. Wilson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Doug Shaver and Ted Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for capital murder in which appellant's punishment was assessed at death.

In his thirty second ground of error, appellant contends reversible error attended the trial court's exclusion of testimony from five witnesses who "had known appellant all his life," to the effect that he was unlikely to commit violent acts in the future.

In *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980), the opinion of a lay witness who was intimately acquainted with Esquivel's criminal conduct for a twenty five year period was permitted, over objection, to testify directly upon the ultimate fact question framed by Article 37.-071(b)(2), V.A.C.C.P.[1] In overruling Esquivel's contention on appeal that the witness was not competent to give such testimony, the Court observed:

"... [I]n *Denham v. State*, 574 S.W.2d 129, we noted that lay opinion is admissible on many different subjects:

'In this State, the opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition—health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things....' "[2]

595 S.W.2d at 528. The competence of the witness to predict that Esquivel would commit future acts of violence was held to "go to the weight rather than the admissibility of the evidence." *Id.*

Subsequently, the Court confronted a capital murder conviction in which a forensic pathologist had been permitted, over objection, to opine that there was a probability that one of the defendants would commit criminal acts of violence that would constitute a continuing threat to society. *Sanne and Skillern v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980). In determining admission of this testimony regarding a matter directly in issue at the punishment stage constituted error, the Court reasoned that the witness was neither shown to be a qualified expert;

"nor does the record reflect Dr. Rupp had sufficient, if any, *first hand familiarity with Skillern's personal history to qualify him* to express a lay witness opinion that Skillern would be a continuing threat to society. Cf. *Esquivel v. State* ...."[3]

■ That opinion testimony by a competent witness on the matter placed directly in issue by Article 37.071(b)(2) is relevant and of assistance to the jury is a proposition so well settled in this State, that the citation of all authorities to that effect would be an exhausting exercise. Accordingly, when such testimony has been offered by the State in prior cases,[4] the review of this Court has invariably been limited to whether the witness was shown to be competent to give it. As *Sanne and*

---

1. "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;"

2. See McCormick and Ray, Texas Law of Evidence, Sections 1421 through 1436.

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. All cases decided to date have involved opinion testimony given by State's witnesses, except for *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr. App.1977).

*Skillern,* supra, held, when the witness is a lay person, his competence is established by a showing that he has sufficient firsthand familiarity with the defendant's personal history. And as intimated in *Esquivel,* supra, a lay person having such a degree of personal familiarity with the defendant over an extended period of time, may well be in a better position to assist the jury on the question of future conduct than a psychiatrist who has based an opinion on a brief visit in a jail cell.

Thus, the ultimate question presented is whether the same rationale should apply to the admissibility of evidence offered by the defendant at the punishment phase of a capital murder trial, as that consistently applied to evidence offered by the State.

On the same issue in a related context, this Court observed,

"In upholding the constitutionality of V.T.C.A. Penal Code, Section 12.43, capital murder, in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), [the Supreme Court of the United States] said: 'A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed.' In addressing itself specifically to the issue to be presented to the jury under Article 37.071(b)(2), * * * the Supreme Court said:

'What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.'

The Court further wrote:

'By authorizing the defense to bring before the jury at the separate sentencing hearing whatever mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function .... Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution. *Furman v. Georgia,* 408 U.S. [238], at 310, 92 S.Ct. [2726] at 2762, 33 L.Ed.2d 346.'

See and compare *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and *Profitt v. Florida,* 428 U.S. 242, 96 S.Ct. [2960, 49 L.Ed.2d 913].

In *Moore v. State,* Tex.Cr.App., 542 S.W.2d 664 (1976), we held that it was proper for two psychiatrists to give testimony at the punishment stage of trial relating to the issue of whether or not a probability existed that the defendant would commit criminal acts of violence which would constitute a continuing threat to society. * * * See also, *Livingston v. State,* Tex.Cr.App., 542 S.W.2d 655 (1976); *Granviel [v. State,* 552 S.W.2d 107 (1976) ]; ... *Smith v. State,* Tex.Cr.App., 540 S.W.2d 693 (1976); [and *Gholson and Ross v. State,* Tex.Cr.App., 542 S.W.2d 395 (1976)].

Thus, it would appear that the statute allows a trial judge broad discretion in determining just what constitutes 'relevant evidence' at an Article 37.071, supra, proceeding.

[In the instant case] Dr. Lawrence S. Schoenfeld a clinical psychologist from the University of Texas Medical School at San Antonio, was called as a witness by appellant at the punishment stage of the proceedings. The record contains an extensive recitation of his [qualifications] as an expert in the ... study of human behavior. * * * Outside the presence of the jury, Dr. Schoenfeld testified as follows:

' * * * The basis of my conclusions is on [Eddie Lee Robinson's] ability to control impulses that he has, a lack of evidence supporting a lot of aggressive impulses or hostile impulses, good reality testing, fairly good planning and fairly good control. * * * That in effect he was not an impulse-ridden character without control. * * * I would not predict future acts of violence. * * * '

Testimony to the contrary on behalf of the State has been held admissible at the punishment stage of trial. A good rule of evidence works both ways. We hold that testimony on the same issue is admissible on behalf of a defendant. The Supreme Court of the United States in *Jurek v. Texas,* supra, upheld the constitutionality of our statutes in capital murder cases because Texas law assures that all relevant information about a defendant will be adduced. *To allow only the State to present such evidence would deny a defendant his rights under Article 37.071, supra, and the Constitution of the United States as construed by the Supreme Court in the Jurek case."* *Robinson v. State,* 548 S.W.2d 63, 65–66 (Tex.Cr.App.1977).

 The record establishes the witnesses in issue [5] had known appellant Cass "all his life." In view of this, we must apply the reasoning of *Esquivel,* supra, and hold the State's objection to the witnesses' testimony was to the weight and not the admissibility thereof; that the testimony was admissible for whatever value it might have in assisting the jury's determination of the second punishment issue.[6]

 We further hold it was reversible error to deprive the jury of the opportunity to consider the opinions of those who best knew the person whose fate they were to determine, and with it, the opportunity to reject, accept and assign weight to evidence concededly relevant, which, as the exclusive arbiters of fact, was the jury's sole function. And as Judge Douglas noted in *Robinson,* supra, to have the jury fulfill that role on the basis of evidence admitted or excluded in an evenhanded fashion without regard to which party offers it is a capital defendant's right.

Appellant's conviction must be reversed.

 In his forty third ground of error, appellant contends the evidence is insufficient to support the jury's finding that

there is a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. Article 37.071(b)(2), supra. Though the conviction must be reversed for other error, we must nevertheless consider this claim, for if it were sustained, the State would be barred from seeking the death penalty on retrial. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

Appellant's only argument in support of this claim is that the properly admitted evidence parallels that held insufficient in *Warren v. State,* 562 S.W.2d 474 (Tex.Cr. App.1978).

In *Warren,* supra, the accused was caught in the act of burglarizing the residence of an armed victim. Warren had entered the residence unarmed, but found a weapon inside and shot the deceased out of fear as the deceased drew his own gun on Warren.

In contrast, appellant and his confederates abducted two of their victims at gunpoint then took them to the site of a jewelry store robbery where they abducted the third victim. They at this point made plans to kill the victims. After holding the victims hostage for a day, appellant and his confederates moved them to an isolated rural location where they were held another day. They bought some lime, then went out to prepare a common grave. All three victims were then gagged, bound with air conditioning duct tape, sedated by a tranquilizer, and executed at the gravesite, then covered with lime during the burial. Evidence established each victim had been shot between seven and nine times. One of the weapons used was a .45 caliber machine gun.

According to appellant's written statement, he was standing by the grave after the victims had been shot and pushed in, when one of the victims, Don Fantich, looked up and took his blindfold off. Fantich jumped out of the grave and began to

---

5. These witnesses were a family friend, a cousin, a neighbor, an uncle and appellant's mother.

6. It is perplexing indeed that a prosecutor would so vehemently oppose the admission of testimony such as that excluded here.

run. Appellant took his .25 caliber magnum, fired twice at Fantich, but missed. Appellant cocked his weapon, fired again and this time hit Fantich in the back of the head. He then dragged the body to the grave "and threw him in."

Needless to say, these facts are a far cry from those adduced in *Warren*, supra.

It is true that the State introduced no evidence that appellant had ever before been convicted of a violent offense; neither could the State prove beyond a reasonable doubt that appellant had ever committed an unadjudicated violent act.

But the shocking circumstances of the offense established and appellant's primary role in it surely evince a "most dangerous aberration of character." *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.1982); see also *Burns v. State*, 556 S.W.2d 270 (Tex.Cr. App.1977). Accordingly, we cannot say the jury was unjustified in returning their verdict of "yes" to the second special issue based alone on the facts of the offense.[7] *Id.*

Appellant's forty third ground of error is overruled.

This judgment of conviction is reversed, and this cause is remanded to the trial court.

---

7. The writer reaches this conclusion with much hesitation and remains convinced that constitutional pronouncements dictate it is appropriate in only the rarest instances. See, e.g., *Green v. State* (Tex.Cr.App., No. 60,133, delivered July 11, 1984) (Opinion Dissenting); and *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979) (Opinion Dissenting).