**Miguel Angel FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 71147.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 8, 1993.

Rehearing Denied March 9, 1994.

Gene Storrs, Amarillo, for appellant.

Stephen F. Cross, Dist. Atty., and Roy Carper, Asst. Dist. Atty., Borger, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

Appellant was convicted of capital murder. TEX.PENAL CODE ANN. § 19.03(a)(2). After the jury returned affirmative findings to the two special issues submitted under TEX. CODE CRIM.PROC. ANN. art. 37.071, the trial court imposed the penalty of death. This case is before us on direct appeal. Because appellant challenges the sufficiency of the evidence to support the jury's affirmative answer to the second special issue, we will briefly review the facts in a light most favorable to the verdict.

In the early morning hours of June 29, 1989, the body of the deceased was found in her automobile. The deceased had been

stabbed ten times in the chest and back. The immediate cause of death was a puncture wound to the heart. Upon receiving word that he was wanted for questioning, appellant turned himself in to law enforcement authorities. He did this on the morning the body was found. Appellant gave four tape recorded custodial statements.

At the time of her death, the deceased, a college student, was working during her summer vacation at a video rental store in Borger. After appellant rented a video tape from the store, he returned shortly before closing time, and waited for the deceased near her automobile. When the deceased exited the store, appellant forced her into her automobile, which he then drove to a remote location outside of town where he sexually assaulted her.[1] After the assault appellant drove himself and the deceased to the city dump site. There he was seen by the deceased's father, who was looking for the deceased because she had not come home after work. Although the deceased's father attempted to apprehend appellant, appellant successfully escaped and drove back to town. According to his statements, appellant parked the automobile, and he and the deceased sat without talking for about ten minutes. Appellant stabbed the deceased with a pocket knife when she began to scream.

■ In point of error nine, appellant claims the evidence is insufficient to support the jury's affirmative answer to the second special issue.[2] In resolving appellant's contention we look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find all of the elements of article 37.071(b)(2) beyond a reasonable doubt. *Black v. State*, 816 S.W.2d 350, 352 (Tex.Crim.App.1991). "The jury is entitled to consider all the evidence admitted at both phases of trial when deliberating on the special issues." *Id.* We

have frequently stated that "the circumstances of the offense, if severe enough, may alone be sufficient to support an affirmative answer" to the second special issue. *Id.* at 355; *Roney v. State*, 632 S.W.2d 598, 601 (Tex.Crim.App.1982). If the facts of the crime itself are not sufficient to support an affirmative finding, "we look for other evidence to support the jury's finding, such as psychiatric evidence, character evidence, prior criminal record, prior extraneous offenses . . . or state of mind at the time of the offense." *Kunkle v. State*, 771 S.W.2d 435, 449 (Tex.Crim.App.1986).

The State maintains that the facts of the offense, in addition to other evidence introduced at trial, support the jury's affirmative response to the second special issue. The State argues that several items seized from the car driven by appellant on the night of the murder, including a brass knuckles-like implement called a "sap glove," a club, and several bullets, show a propensity for violence. In addition, the State's psychiatrist, Dr. Clay Griffith testified, based upon a hypothetical substantially tracking the facts of the instant case, that appellant would be a future danger to society. When asked to give the basis for his opinion, Griffith testified that "this very vicious hideous murder was unprovoked," and that "people with this type of personality who commit this type of murder are going to be violent again." Griffith also noted that appellant going to sleep following the offense indicated a lack of conscience. There was no evidence, Griffith testified, from which he could deduce any remorse or concern for the victim on the part of appellant. Griffin stated that the lack of remorse "further adds to this type of personality description, people without conscience. Things don't bother them. They act for themselves to please themselves no matter what the cost to property or life is." Finally, Griffith testified that the various items in the

---

1. Appellant's statements are inconsistent as to whether he exhibited the murder weapon at the time the deceased was forced into her car and appellant denied exhibiting the murder weapon during the sexual assault.

2. The following special issues were submitted to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; and

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

automobile driven by appellant constituted further evidence that "violence is going to occur or maybe has occurred and we don't know about it.... Sooner or later he's going to be violent. You can't get worse than what he did except in terms of numbers."

Considering that the State's case at punishment, to some extent, rested upon Dr. Griffith's testimony, we conducted a review of cases in which we held the evidence was insufficient to support the jury's affirmative answer to the second special issue. Although we have repeatedly recognized that psychiatric testimony "is not essential to support an affirmative finding to the issue of future dangerousness[,]" *Huffman v. State*, 746 S.W.2d 212, 224 (Tex.Crim.App.1988), it is equally true that we have not found the evidence in any case to be insufficient where the State offered psychiatric testimony that the defendant would constitute a continuing danger to society.[3] *See, e.g., Ellason v. State*, 815 S.W.2d 656, 664–65 (Tex.Crim.App.1991) (where evidence held insufficient, the only psychological testimony was *favorable* to defendant); *Smith v. State*, 779 S.W.2d 417, 421–22 (Tex.Crim.App.1989) (where evidence insufficient, State failed to produce psychiatric testimony or evidence of prior criminal record or history of violence, and the facts showed that defendant did not plan murder with forethought); *Huffman*, 746 S.W.2d at 225 (where evidence insufficient, State offered no psychiatric or reputation testimony, or evidence of prior violent crimes); *Marras v. State*, 741 S.W.2d 395 (Tex.Crim.App.1987) (where evidence held insufficient, there was no psychiatric testimony and jury unable to consider prior felony offenses); *Beltran v. State*, 728 S.W.2d 382, 388–90 (Tex.Crim.App. 1987) (where evidence held insufficient, there was no psychiatric testimony, prior criminal convictions were not violent in nature and only one witness testified to bad character); *Keeton v. State*, 724 S.W.2d 58, 64 (Tex.Crim. App.1987) (where evidence insufficient, there was no psychiatric or character testimony and no evidence or past violent acts); *Roney*, 632 S.W.2d at 603 (where evidence held insufficient there was no psychiatric testimony, no character evidence and no prior criminal record, and defendant cooperated with police); *Wallace v. State*, 618 S.W.2d 67, 69 (Tex.Crim.App.1981) (where evidence insufficient, there was no evidence of prior convictions, no character evidence and no psychiatric testimony); *Brasfield v. State*, 600 S.W.2d 288, 293 (Tex.Crim.App.1980) (where evidence held insufficient, there was no evidence of prior criminal record or bad acts, no psychiatric evidence or character evidence), *overruled on other grounds, Janecka v. State*, 739 S.W.2d 813, 819 (Tex.Crim.App. 1987); *Warren v. State*, 562 S.W.2d 474, 476–77 (Tex.Crim.App.1978) (where evidence held insufficient, there was no psychiatric testimony and prior criminal acts were not violent). Moreover, we have held the evidence sufficient on the second issue where the State's case at punishment rested almost exclusively on psychiatric testimony, *see Moore v. State*, 542 S.W.2d 664, 676 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977), *overruled on other grounds, Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) (evidence sufficient on second issue in light of facts of the offense—rape, robbery and shooting of victim—and psychiatric testimony); *Smith v. State*, 540 S.W.2d 693 (Tex.Crim.App.1976), *cert. denied*, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977) (evidence sufficient on

---

3. The one exception to this might be the case of *Garcia v. State*, 626 S.W.2d 46 (Tex.Crim.App. 1981). There, we held the evidence was insufficient to support the jury's affirmative finding on the second issue despite the testimony of a psychologist that the defendant would be violent and aggressive in the future. However, the facts of that case are unique. The psychologist testified, on the basis of a thirty minute silent observation of the defendant, that he would be violent and aggressive in the future. *There was no evidence that the psychologist knew the facts of the offense or took them into account in making his conclusions:*

It was Dr. Landrum's testimony that from his silent 30 minute observation he was able to satisfy himself of all the necessary elements to make the determination that it was probable that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. There is nothing to indicate that Dr. Landrum knew the facts of the instant case, or if he did, took them into consideration in reaching his evaluation. *Id.* at 51.

second issue based on facts of offense—killing a grocery store operator in course of robbery—, a prior marijuana conviction and psychiatric testimony that defendant displayed no apparent remorse and that his future conduct would not change).[4]

We conclude that the evidence of future dangerousness introduced by the State was sufficient to convince a rational trier of fact that appellant was a continuing threat to society. *Black*, supra. The abduction of the victim in the instant offense was committed with certain forethought and deliberation, being contemplated by appellant for over an hour. After renting the video, appellant went home and watched part of the movie before returning to the store parking lot to wait for the victim's departure from work. In addition, appellant had the opportunity after committing the rape to release the victim, but chose not to. When sighted by the victim's father prior to the murder, appellant fled with the victim. Further, after stabbing the victim repeatedly in the chest and back with his pocket knife, appellant went to sleep in another car. Although appellant turned himself in voluntarily the following day, he twice attempted to blame other persons for the offense.[5] Appellant ultimately confessed that he was not acting under the duress or domination of a third party. The State offered psychiatric testimony that appellant would be a continuing threat to society. Pointing to appellant's apparent lack of remorse, Dr. Griffith testified that such a person lacked social conscience and would definitely be violent in the future. Although the State offered no character evidence or evidence of a prior criminal record, in view of the facts of the offense itself, the calculated and deliberate nature of appellant's actions,

the fact that appellant was not acting under the influence of a third party and the psychiatric testimony, we hold a rational jury could conclude beyond a reasonable doubt that appellant would commit criminal acts of violence in the future. Point of error nine is overruled.

■ In point of error one appellant claims the trial court erred in excusing venireperson Ernesto Rodriguez for cause. The record shows that Rodriguez was challenged by the State for his inability to read or write. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(11). Appellant asserts that Rodriguez was literate and was therefore not subject to a challenge under article 35.16(a)(11) and also that the challenge was racially motivated. We decline to address the latter assertion as it was not raised at trial. TEX.R.APP. P. 52(a). As to the former assertion, excusing a venireperson pursuant to article 35.16(a)(11) is a matter within the discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *Allridge v. State*, 762 S.W.2d 146, 165 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). There is no abuse if the record supports the court's decision. *See, e.g., Goodwin v. State*, 799 S.W.2d 719, 736 (Tex.Crim.App.1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991); *Johnson v. State*, 773 S.W.2d 322, 332 (Tex.Crim.App.1989), *aff'd Johnson v. Texas*, ── U.S. ──, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993).

Rodriguez stated during voir dire that he could not write very well and explained his inability to write as deriving from his difficulty with reading. He admitted that there

---

**4.** We do not by these observations intend to suggest that where the State offers psychiatric testimony that the defendant will be a future danger to society, the evidence will *never* be insufficient to support an affirmative finding on the second issue. However, we make the observation that where there is such psychiatric testimony, it is more likely that we will come to the conclusion that a rational jury could find that the defendant will constitute such a threat.

**5.** In his first tape recorded statement appellant confessed to committing the offense on his own. In his second tape recorded statement, appellant claimed he had been with a friend, Romolo Cha-

vez, who instigated the abduction. Appellant stated that after the two had raped the victim and returned to town, he left Chavez with the victim. Appellant denied stabbing the victim and stated that Chavez must have done it since he knew Chavez had a knife. In his third statement appellant recanted his second statement and stated that a different friend, Carlos Ponce, had participated in the offense. In his fourth taped statement appellant recanted both his second and third statements and stated that he had acted alone, as he had confessed originally in this first taped statement.

were about ten words of the second special issue that he could not understand. He testified that he could not read a newspaper, and that his children, who were in the second and third grades, were helping him learn to read from their books. We hold the trial court did not abuse its discretion in granting the State's challenge under Article 35.16(a)(11). *See Goodwin,* 799 S.W.2d at 736 (where venireperson could read only a few words and could only write her name, the juror literacy requirements were not met); *Johnson,* 773 S.W.2d at 332 (challenge for cause not improperly granted where venireperson did not understand some of the words on the juror questionnaire or in the special issues). Point of error one is overruled.

■ In point of error two appellant claims the trial court erred in excusing venireperson Linda Holman pursuant to a challenge for cause by the State. Although the State set forth a number of reasons in support of its challenge, the trial court expressly granted the challenge based upon Holman's demeanor and her voir dire testimony that she would consider a defendant's failure to testify an admission of guilt. Appellant claims that the State's true motive in challenging Holman was her equivocal responses regarding assessment of the death penalty.

■ Article 35.16(b) provides that a challenge for cause may be made by the State if a venireperson "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." The fact that a venireperson's bias against the law was favorable toward the State is no bar to the State in initiating a challenge. *Nethery v. State,* 692 S.W.2d 686, 691 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). As stated above, challenges under article 35.16(b) are matters within the trial court's discretion, and the court's actions in granting or denying the challenge will not be disturbed if supported by the record. *See, e.g., Pyles v. State,* 755 S.W.2d 98, 107 (Tex. Crim.App.), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Farris v. State,* 819 S.W.2d 490, 501 (Tex.Crim.App. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992).

A venireperson is challengeable by the State for cause under article 35.16(b) based upon their belief that the defendant's failure to testify constitutes an admission of guilt. *Guerra v. State,* 771 S.W.2d 453, 467 (Tex. Crim.App.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). Venireperson Holman testified repeatedly that she would consider the issuance of an indictment against a defendant and a defendant's failure to testify as indications of guilt. Holman repeatedly stated that she would be unable to change her opinion on those issues, even if instructed otherwise by the court. That such a bias might have been in favor of the State does not prevent the State from making a challenge on that basis. *Nethery, supra.* Further, the fact that the State may have had another motive for its challenge is irrelevant in view of the fact that Holman was properly subject to a challenge on the stated grounds. Point of error two is overruled.

■ In point of error three appellant claims the trial court erred by admitting into evidence items seized from an automobile, pursuant to an allegedly illegal search. The items were seized from the automobile appellant drove to the video rental store the night of the murder. Appellant left the car in the parking lot, where it was searched the next day pursuant to a search warrant.

When the legality of a search is in issue, the defendant bears the burden of proving that his own privacy rights were violated. *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978) (proponent of motion to suppress has burden of establishing that his own Fourth Amendment rights were violated); *Wilson v. State,* 692 S.W.2d 661, 669 (Tex.Crim.App.1984) (opinion on rehearing) (defendant's privacy interest in area searched is substantive element of fourth amendment claim on which he bears burden). Appellant's Motion to Suppress complained of the search of "Defendant's automobile". However, at the hearing on appellant's Motion to Suppress, evidence was admitted that the automobile searched was registered in the name of Cesarea Ran-

gel de Flores, appellant's mother.[6] No evidence offered at the hearing demonstrated that appellant had any expectation of privacy in the car. None of the evidence offered demonstrated that appellant had any interest in or right to use the car. In the absence of any evidence showing that appellant had a legitimate expectation of privacy in the vehicle, appellant did not have standing to contest its search. *Green v. State*, 682 S.W.2d 271, 294 (Tex.Crim.App.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985) (defendant did not have standing to contest search of his brother's car); *Esco v. State*, 668 S.W.2d 358, 361 (Tex.Crim.App. 1982) (defendant lacked standing to complain of search of car owned by co-defendant); *compare Goodwin*, 799 S.W.2d at 725 n. 2 (defendant had standing to contest search of co-defendant's car where defendant asserted ownership in luggage seized from the vehicle and such luggage was found at defendant's feet when search took place).[7] Point of error three is overruled.

In point of error four appellant claims the trial court erred by admitting into evidence a sample of his blood. Appellant argues that the blood sample was taken as a result of an illegal search because he did not consent to the search and because the executing officer failed to present him with a copy of the warrant in accordance with TEX.CODE CRIM. PROC.ANN. art. 18.06(b). The State asserts

that appellant's objections at trial do not comport with his complaints on appeal.

■ At trial appellant objected to the admission of the blood sample on the basis that appellant had not been informed of his rights and had not consented to the taking of the blood sample.[8] Because appellant never asserted as an objection that the warrant had not been properly presented in accordance with article 18.06(b), the trial court did not rule on that issue. Absent a ruling, there is nothing for us to review. TEX.R.APP.P. 52(a). *Bower v. State*, 769 S.W.2d 887 at 905 (Tex. Crim.App.1989). Appellant does not in this appeal complain that he was not informed of his rights. With respect to appellant's claim that he did not consent to the search, lack of consent does not invalidate the taking of a blood sample pursuant to a valid warrant. *See Ferguson v. State*, 573 S.W.2d 516, 520 (Tex.Crim.App.1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979) (for taking of blood, warrant must be obtained *or* accused must consent). The warrant authorized the seizure of appellant's blood. Moreover, appellant does not in this appeal contend that the warrant was invalid. Point of error four is overruled.

■ In point of error five appellant claims the trial court erred in admitting into evi-

6. The search warrant affidavit, admitted into evidence for purposes of the hearing together with the search warrant, stated that the automobile in issue was "registered to Cesarea Rangel de Flores, mother of [appellant]."

7. We note that the State did not raise the issue of standing until its brief in this appeal. However, we have held that the Supreme Court's decision in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), "put defendants on notice that the privacy interest in the premises searched is an element of their Fourth Amendment claim, which they bear the burden of establishing" and that our decision in *Sullivan v. State*, 564 S.W.2d 698 (Tex.Crim.App.1978) (opinion on rehearing), "put defendants on notice that the State would be allowed to raise the issue of standing for the first time on appeal." *Wilson v. State*, 692 S.W.2d 661, 669 (Tex.Crim. App.1984) (opinion on rehearing). We further recognized that

[t]he reviewing court may properly sustain the trial court's denial on the ground that the

evidence failed to establish standing as a matter of law, even though the record does not reflect that the issue was ever considered by the parties or the trial court.

*Id.* at 671.

8. Appellant made the following objections at trial:

[W]e're going to object to the admission of testimony concerning the taking of a blood sample in the absence of a showing that [appellant] was informed of his rights concerning the blood sample and in the absence that he consented, voluntarily consented to the taking of a sample.

... [T]here has been no showing by the State at this time that there was any consent given by [appellant] for the taking of a sample of his blood in this case and we object to any testimony concerning the taking of [appellant]'s blood absent any showing of consent on his part and that he was advised of his right to give or withhold giving of a blood sample.

dence an oral statement [9] given by appellant. Appellant claims he was coerced into making the statement as a result of promises made to him during his interrogation.

The court conducted a pre-trial hearing on appellant's motion to suppress. *See* TEX. CODE CRIM.PROC.ANN. art. 38.22; *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). According to the testimony at the hearing, appellant entered the police station shortly before 8:00 a.m. on June 29, 1989. Lieutenant Charles Keys advised appellant of his *Miranda* rights and appellant stated that he understood those rights. Keys and Investigator Michael Blackmon interrogated appellant for approximately an hour and a half upon his arrival at the station. This initial interview was not tape recorded. Appellant subsequently gave his first tape recorded statement at approximately 12:50 p.m. on June 29th. Keys testified that at no time did appellant indicate that he wanted to invoke his right to a lawyer. Keys testified that neither he nor any one else threatened appellant or promised him anything. Keys further testified that sometime between 8:00 a.m. and 11:00 a.m. on June 29th, appellant asked if his mother [10] was at the police station, and Keys informed him that she was. Keys informed appellant that, based on information he had obtained from Blackmon, appellant's mother was being held as a material witness. Keys also testified that appellant was never promised that his mother would be released if he gave a statement. Blackmon testified that during the initial untaped interview on June 29th he told appellant that his mother was being held as a material witness and that she would be released if and when she was no longer needed. Blackmon further told appellant that his mother would not be needed if appellant told the truth about his involvement. However, Blackmon testified that he did not make any promises that appellant's mother would be released if appellant confessed or that she would not be released if appellant did not confess. Blackmon also testified that appellant was not threatened, and that he gave his statements voluntarily. No other witnesses testified at the suppression hearing.

The trial court overruled appellant's motion to suppress, and subsequently made findings that appellant was informed of his *Miranda* rights, that he understood and waived his rights, and that he was not coerced or induced by promises, force or other improper influence. The court concluded that the first statement was freely and voluntarily made and admissible as evidence at the trial on the merits.

"The trial court is the sole trier of the facts at a hearing upon a motion [to suppress], and this Court is not at liberty to disturb any finding supported by the record." *Fierro v. State*, 706 S.W.2d 310, 316 (Tex.Crim.App. 1986). The trial court is also the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Crim. App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Although the fact that appellant's mother was being held as a material witness might have influenced appellant to cooperate, there is no evidence that appellant was informed of that fact in an effort to induce his cooperation. Keys testified that it was appellant who raised the question of his mother's whereabouts. Given that the officers believed appellant's mother was in fact being held as a material witness, their response to appellant

---

**9.** Appellant gave four tape recorded statements. The first and fourth statements were offered into evidence by the State and the second and third statements were offered by appellant. Transcripts of each of the statements were also admitted. Although somewhat unclear, it appears that appellant is complaining of admission of the first and fourth statements. Appellant's Motion to Suppress did not specify which statement(s) appellant sought to suppress; however, the trial court's findings of fact on the suppression motion addressed only the admissibility of the first statement. Because appellant did not obtain a ruling from the trial court on his fourth state-

ment, appellant has not properly preserved his complaint with regard to the fourth statement. We also note appellant does not claim the fourth statement was tainted as a result of the alleged illegality of the first statement. We will therefore only address admissibility of the first statement.

**10.** At a couple of points during the testimony, reference is made to both appellant's mother *and* stepfather; however, it appears that the references to appellant's mother are appellant's primary concern.

was a truthful one. Both officers testified that appellant was not threatened, no promises were made, and he gave his statements voluntarily. The record supports the trial court's finding. Point of error five is overruled.

 In point of error six appellant claims the trial court erred by allowing the testimony of the State's expert witness, Dwight Adams, concerning the results of DNA testing without a showing that such testing had gained general acceptance, authenticity, and accuracy within the scientific community. The standard for admission of expert testimony relied upon by appellant is commonly referred to as the *Frye* test. *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). However, *Frye* is no longer the applicable standard governing the admission of expert testimony; rather, Rule of Criminal Evidence 702 governs the admissibility of novel scientific evidence, including evidence of DNA testing. *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim. App.1992); *see also Hicks v. State*, 860 S.W.2d 419 (Tex.Crim.App.1993). As we recently explained:

> Pursuant to Rule 702, the proponent of the scientific evidence must prove by clear and convincing evidence outside the presence of the jury that the proffered evidence is reliable and relevant. [ ] Once determined reliable and relevant, such evidence is admissible unless the trial court determines that its probative value is outweighed by any of the factors identified in Rule of Criminal Evidence 403.

*Hicks*, 860 S.W.2d at 422–23 (citations and footnotes omitted).

Adams testified in a hearing on admissibility out of the presence of the jury that he was employed as a special agent for the Federal Bureau of Investigation (FBI), assigned to the DNA analysis unit, held a Bachelor's Degree and a Master's Degree in science,

and a Ph.D. in biology, had extensive training in all of the scientific disciplines relevant to DNA technology, had published papers concerning DNA profiling, had conducted research in the area, and had performed DNA profiling in thousands of cases. Adams testified that the DNA typing technique used by the F.B.I. is used in thousands of laboratories across the country and is generally accepted in the medical and scientific communities and by the United States government. According to Adams, this type of testing either produced the correct result or no result. Based upon Adams testimony during the hearing the trial court concluded that DNA testing was "scientifically reliable" and admissible as evidence. Viewing the evidence in the light most favorable to the trial court's finding, we hold the trial court did not abuse its discretion. The record supports the trial court's finding that the evidence was relevant and reliable, and that no factor listed in Tex.R.Crim.Evid. 403 would have outweighed its probative value. Point of error six is overruled.

In point of error seven appellant claims the trial court erred in failing to grant appellant's motion for mistrial due to improper jury argument during the guilt-innocence phase of appellant's trial and in failing to instruct the jury to disregard the improper argument. The State contends that appellant has not preserved this point for review. We agree with the State.

 To preserve error for alleged improper jury argument, a defendant must pursue his objection until an adverse ruling is received. *Stevens v. State*, 671 S.W.2d 517, 521 (Tex.Crim.App.1984). Here, appellant failed to pursue his objection until he obtained an adverse ruling.

Following the jury argument in question,[11] appellant objected as follows:

---

11. The prosecutor made the following comments in his closing argument at guilt:

> Now, the Judge has instructed you, and I want to go over this with you, that the law permits a defendant not to testify. He had that right and if he does not testify, you cannot consider that as evidence against him.
>
> We went over that in voir dire and everybody said they could give the Defendant the benefit

of that right and that is a right but that does not mean to ignore the tapes that you heard. Those are in evidence and you heard what he had to say on those tapes and you can't get in there—*there may be a question in your mind about certain issues but you can't get back in the jury room and say, I wonder what about something that you think he should have said*

[The prosecutor] is simply emphasizing the point and by his own statements making a comment on what the Court has instructed him and the jury not to comment on. We object and ask that he be instructed to leave it alone like the law tells him to and failing such instruction and in any event move for a mistrial.

The judge responded as follows:

Ladies and gentlemen, I'll remind you that what the attorneys say is not evidence and cannot be considered by you as any evidence. You'll be guided by the instructions of the Court only.

Although the judge did not give a clear instruction to disregard and did not rule on appellant's motion for a mistrial, appellant, apparently being satisfied, did not pursue his objection in order to obtain an adverse ruling. Where an adverse ruling is not obtained, nothing is preserved for review. *See, e.g., Cooks v. State*, 844 S.W.2d 697, 727–28 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Graham v. State*, 566 S.W.2d 941, 954 (Tex. Crim.App.1978). Point of error seven is overruled.

■■■■ In point of error eight appellant claims the trial court erred by submitting an instruction on mitigating evidence in the charge at punishment.[12] Appellant contends that he made a strategic decision during trial not to introduce any mitigating evidence at punishment for fear that such evidence might

be considered by the jury to be probative of the special issues. Appellant argues that the instruction forced the jury to consider mitigating evidence, and, thus, defeated his trial strategy. Appellant further contends that no mitigating instruction should be given except in circumstances such as those that existed in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (mental retardation, child abuse), that is, evidence which cannot be given effect through the jury's consideration of the special issues. In the case of charge error that was properly objected to at trial, reversal is called for unless the error is harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

Appellant confuses mitigating evidence in general with the type of mitigating evidence that cannot be adequately considered within the scope of the special issues. Even in the absence of a mitigating evidence instruction, the jury could have considered any mitigating evidence that was introduced within the scope of the special issues. The instruction was therefore beneficial, rather than harmful, to appellant by explicitly permitting the jury to give effect to any mitigating evidence that was introduced by answering "no" to one or both of the special issues.[13] Although a mitigating evidence instruction is only *required* when the mitigating evidence is such that it cannot be given effect through the special issues, we cannot conclude that inclusion of such an instruction when it is *not* required is harmful. We hold that appellant was not

---

*because you cannot talk about that and you cannot discuss it and you have to—*

(emphasis added). Appellant objected to the highlighted portion as commenting upon appellant's failure to testify.

**12.** The following instruction was included in the charge:

During your deliberations and in answering the Special Issues presented to you, you shall consider mitigating circumstances supported by the evidence, if any, presented by either party, that was admitted for your consideration in both phases of the trial. A mitigating circumstance may be any aspect of the Defendant's character, background or the circumstances of the crime for which you have found the Defendant guilty, which you believe makes a sentence of confinement for life appropriate.

If you find there are any mitigating circumstances, you must decide how much weight

they deserve and give them that effect you believe to be appropriate when you answer the Special Issues.

If you believe from the evidence that the State has proven beyond a reasonable doubt that the answers to the Special Issues are "Yes" but you are further persuaded by the mitigating evidence that the defendant should not be sentenced to death in this case, then you shall answer one or both of the Special Issues "No" in order to give the effect to your belief that the death penalty should not be imposed in this case.

**13.** We note that even without the mitigating evidence charge, the jury is permitted to give effect to mitigating evidence which can be considered within the scope of the special issues by responding "no" to one or both of the issues. Appellant does not claim that any of the mitigating evidence presented could not be considered within the scope of the special issues.

harmed by the inclusion of the mitigating evidence instruction.[14] Point of error eight is overruled.

Appellant filed a pro se brief in this appeal. Although appellant is not entitled to hybrid representation, in the interest of justice we have reviewed his contentions and find them to be without merit. *Stephens v. State,* 677 S.W.2d 42, 45 (Tex.Crim.App.1984).

The judgment and sentence of the trial court are affirmed.

CAMPBELL and OVERSTREET, JJ., concur in the result.

CLINTON, Judge, dissenting.

The Court is obviously reluctant to hold the evidence sufficient to support the jury's affirmative answer to the second special issue under former Article 37.071(b), V.A.C.C.P., based on nothing more than the facts of the offense itself. That is understandable, for there is nothing in the facts themselves so heinous or shocking as to evince a particularly "dangerous aberration of character" probative of future dangerousness, such as we found in, e.g., *King v. State,* 631 S.W.2d 486 (Tex.Cr.App.1982) and *Cass v. State,* 676 S.W.2d 589 (Tex.Cr.App.1984). The Court therefore resorts to the opinion of the psychiatrist, Dr. Griffith, to justify the jury's finding of future dangerousness in this cause. Because I do not believe Griffith's testimony adds anything of substance to whatever inference of future dangerousness may be gleaned from the facts themselves, I respectfully dissent.

It is true that Griffith testified, based on a hypothetical question formulated from the facts of the instant offense, that appellant would commit acts of violence that would constitute a continuing threat to society. It was developed on cross-examination, however, that Griffith believed that *anyone* who committed murder in the course of sexual assault would constitute a future danger. Griffith testified:

"Q. Anyone convicted of capital murder would, in your opinion, commit future acts of violence.

A. Yes, that's my opinion. I would not want to, you know, say this for somebody that I didn't know specifically about but everyone that I know about, this is true.

Q. Well, wherein you were given a set of hypothetical facts that if true would amount to capital murder do you have an opinion that individual would commit future violent acts?

A. Well, that's not enough information, sir.

Q. What other information would you want other than the fact that the individual had been convicted of capital murder?

A. I would want a lot more information. You're taking something out of context and—

Q. What? Such as what?

A. Well, you're pulling out of the air—

Q. Okay.

A. —someone who's been convicted of capital murder. We know nothing about it, where it was, or what the circumstances were.

\* \* \* \* \* \*

Q. You have never, have you, sir, testified in any capital murder case in Texas that an individual would not commit future acts of violence?

A. Yes, sir. I have.

Q. Then, you do not have the opinion that all people convicted of capital murder should receive the death penalty?

A. Should receive the death penalty?

Q. Yes.

A. No.

Q. Okay. Have you ever testified in a case wherein an individual has been convicted of murder in conjunction with a rape that he would not be a future threat to society and commit future acts of violence?

A. I don't believe so.

Q. So, that is one area that you are firm in?

A. Yes, sir.

\* \* \* \* \* \*

---

**14.** We note that appellant does not contend that he was forced to introduce mitigating evidence

that he would not have introduced but for the charge.

Q. And an individual that fits the patterns that you have been given, would—I guess, would he or would he not have engaged in prior crime?

A. Might have.

Q. That doesn't make any difference to you one way or another?

A. Not with a crime like this, it doesn't.

Q. Okay. So then, basically your bottom line analysis is that the crime itself is all it takes for you to make your prediction?

A. This is, yes, what I started out saying."

Appellant did not attempt to voir dire Dr. Griffith, under Tex.R.Cr.Evid., Rule 705(b). Thus, he did not attempt to determine what it is exactly about murder in the course of rape that would lead a member of the psychiatric community automatically to conclude that the perpetrator will continue to commit violent acts in the future. The trial court therefore had no immediate foundation to exclude Griffith's testimony under Rule 705(c), supra. In any event, appellant did not request it.

I am willing to suppose, because the law supposes, that a psychiatrist may perceive something in the conduct of an accused, disclosed to him in hypothetical form, that from the perspective of his training and experience is revealing as to whether the actor is likely to constitute a continuing threat of violence. See generally *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Because appellant did not challenge the admissibility of Griffith's testimony under Rule 705(c), I would even be willing to suppose it has some probative value beyond the ken of laymen, that it will "assist the trier of fact to understand" how the facts of the case are in themselves indicative of a likelihood of future dangerousness beyond a reasonable doubt. Tex.R.Cr.Evid., Rule 702. Therefore, ordinarily I would accept, if grudgingly, the majority's conclusion that Griffith's testimony made all the difference between evidentiary support and non-support of the jury's affirmative answer to the second special issue. I cannot accept Griffith's suggestion, however, that the jury should find appellant a future danger simply because he committed murder in the course of a rape, for that particular psychiatric imprimatur violates due process.

The Eighth Amendment does not necessarily dictate that former Article 37.071 operate to narrow the class of death eligible capital defendants, since to some extent V.T.C.A. Penal Code, § 19.03, may already suffice to accomplish this. See *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Nevertheless, the Legislature obviously intended that former Article 37.071, § (b)(2), should serve some narrowing function. Surely the Legislature did not contemplate that the jury in a prosecution for murder in the course of aggravated sexual assault under § 19.03(a)(2), supra, should invariably answer the second special issue "yes." That would render Article 37.071, § (b)(2) essentially redundant, which is to say, "a useless thing." *Heckert v. State,* 612 S.W.2d 549 (Tex.Cr.App.1981). Even if there were a psychiatric basis to conclude that all rapist-murderers will commit future acts of violence beyond a reasonable doubt— Griffith did not identify one—we would not want to presume that the Legislature meant for a capital jury to do a useless thing by going through the motions of answering the second special issue. It seems to me the law does not sanction a finding of future dangerousness in every case of murder in the course of sexual assault simply because it *was* murder in the course of sexual assault. Yet that observation was the only real thing of substance Griffith's testimony added to the facts of the case itself. And the majority is rightly loathe to derive support for the jury's affirmative answer to the second special issue from the facts of the case itself.

The judgment should be reformed to reflect a sentence of life in the penitentiary. Because the majority does not, I respectfully dissent.