Affirmed and Memorandum Opinion filed January 15, 2009








Affirmed and Memorandum Opinion filed January 15, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00987-CR

_______________

 

MELVIN JOHNSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                                

On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1074760

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant Melvin Joseph Johnson
challenges his conviction following a jury trial for capital murder.  The trial
court assessed punishment as life imprisonment without possibility of parole,
as required by statute.  Appellant contends that the trial court erred in (1)
admitting evidence seized as a result of his warrantless arrest; and (2)
overruling appellant=s objections to the State=s closing argument.  We affirm.

Background








Shortly before 6:00 a.m. on June 26,
2006, Joel Portillo was shot once in the chest during an armed robbery in the
parking lot of his apartment complex.  Joel=s father, Jose Portillo, witnessed
the robbery and shooting.  Roderick Mack, a bystander, also witnessed the
robbery and shooting.  Joel=s assailant fled after shooting him, and Joel later died from
his injuries.

Based upon information gathered from
Mack and Jose Portillo, homicide investigators began searching for the suspect
and the car he was seen driving from the crime scene.  Mack had described the
car to officers as a white Dodge with a distinctive dent in its side.  During
the morning of June 27, 2006, Houston Police Officer Michael Miller spotted the
car at an apartment complex near the crime scene and watched two men get into
the car.  The men, Henry Hebert and Bradley Hassan, drove to a nearby fast food
restaurant where they were stopped by police.

Police discovered that Hebert was the
car=s owner.  Police impounded the car
while Hebert and Hassan were interviewed regarding Joel Portillo=s murder.  Neither Hebert nor Hassan
matched the suspect=s description.  Hebert and Hassan told police a man with the
street name ABookie@ borrowed Hebert=s car during the morning of June 26 and had it at the time of
the murder.

Hebert and Hassan agreed to ride
along with investigators and show them different locations in southwest Houston
where ABookie@ might be found.  Hebert and Hassan
first led police to Myeisha Turner=s apartment.  Turner is the mother of
appellant=s child.  The manager of Turner=s apartment complex told Houston
Police Sergeant John Belk that Turner and appellant=s child had left Houston for New
Orleans.

Hebert and Hassan then led officers
to another apartment complex in southwest Houston.  Hebert and Hassan saw
appellant at the complex and identified him to Sergeant Belk and Officer Miller
as ABookie,@ whom police now considered to be a
suspect in Joel Portillo=s murder.








Houston Police Sergeant Jim Binford
was notified that the suspect in the Portillo murder had been spotted, and he
drove to another location in the apartment complex to observe appellant. 
Police had been told that appellant always carried a gun, had a volatile
personality, and Awas known in the area for that volatile and dangerous manner.@

Sergeant Binford observed appellant
in a heated argument and informed Sergeant Belk and Officer Miller about this
disturbance.  Sergeant Belk and Officer Miller had momentarily lost sight of
appellant, and when they saw him again they too observed that he was engaged in
a heated argument with two other individuals outside an apartment.  

Based upon their observations of the
argument, appellant=s apparent volatility, and their belief that he was armed,
the three officers decided to approach appellant with their weapons drawn and
arrest him for breach of the peace.  Appellant was the only person arrested,
and no charges were filed for breach of the peace.  Appellant was not armed
when he was arrested.  The officers did not have a warrant to arrest appellant
for Joel Portillo=s murder when they arrested him for breach of the peace. 

Following his arrest, appellant told
Sergeant Belk that he was arguing with two individuals because they had broken
into an apartment he was renting and had sex there with two women from Dallas. 
Upon learning that the officers were investigating a homicide, appellant denied
killing anyone and began cooperating with police.  Appellant consented to
searches of his car and apartment.  No murder weapon was recovered; police
found three .9 millimeter bullets during the search of appellant=s apartment.

Officers transported appellant to the
police station, photographed him, and informed him of his rights.  Appellant
indicated that he understood his rights, voluntarily waived those rights, and
gave police a videotaped statement.  Officers placed appellant=s picture into a photo array and
showed the array to Roderick Mack and Jose Portillo separately.  Mack and Jose
Portillo both positively identified appellant as the person who fatally shot
Joel Portillo on June 26.








On October 16, 2007, appellant filed
several motions challenging the legality of his arrest and the admissibility of
evidence seized as a result of that arrest, including (1) his videotaped
statement; (2) any identifications made using the photograph taken following
his arrest; and (3) any evidence found as a result of the searches made
following his arrest.  On November 9, 2007, the trial court held a hearing on
appellant=s motions to suppress.

At the November 9 hearing, Sergeant
Belk testified about the circumstances surrounding appellant=s arrest.  Sergeant Belk also
testified that officers intervened and arrested appellant for committing a
breach of the peace in their presence (1) after observing him in a heated
verbal confrontation; and (2) based upon the information that he was always
armed and known to be volatile and dangerous.  Sergeant Belk testified that
before the officers approached appellant he was Ayelling and gesticulating his arms@ and making unspecified verbal
threats.  Sergeant Belk also testified that appellant appeared to be the
aggressor in the confrontation.  The trial court recessed the hearing and postponed
ruling on appellant=s motions to suppress until appellant had an opportunity to
examine Sergeant Binford on the record during a trial recess.

Trial began on November 12, 2007. 
Following jury selection and testimony by Houston Police Officer D.C. Lambright
and Mack, appellant examined Sergeant Binford outside the jury=s presence on the motions to
suppress.  Sergeant Binford testified that he could not provide the names or
addresses of any complainants or witnesses to the breach of the peace involving
appellant because those individuals fled the scene too quickly for officers to
gather their information.  Sergeant Binford testified that he witnessed
appellant screaming, yelling, arguing, and causing a disturbance that required
police intervention.  Sergeant Binford testified that no charges were filed
against appellant for breach of the peace and no separate police report for
breach of the peace was filed because the details of the breach and arrest
would be part of the capital murder police report.  Following Sergeant Binford=s testimony, the trial court denied
appellant=s motions to suppress.








Additionally, appellant objected to
several statements made by the prosecutor during closing argument.  Appellant
objected twice on grounds that the closing argument improperly focused on
victim impact from Joel Portillo=s murder.  Appellant=s first objection was sustained, and
the jury was instructed to disregard the objectionable statement; appellant=s motion for a mistrial was denied. 
Appellant=s second objection was overruled.

The jury found appellant guilty of
capital murder, and the trial court assessed punishment at life imprisonment as
required by statute.  The trial court signed a judgment reflecting the jury=s verdict and the trial court=s sentence on November 15, 2007.

Analysis

Appellant challenges the trial court=s admission of evidence seized as a
result of his warrantless arrest.  Appellant also contends that it was
reversible error for the trial court to overrule his objections to the State=s closing argument.  We address each
issue in turn.

I.          Legality of Appellant=s Warrantless Arrest

The trial court is the sole judge of
the credibility of witnesses at a hearing on a motion to suppress evidence and
may choose to believe or disbelieve any or all of the witnesses= testimony.[1] 
Johnson v. State, 871 S.W.2d 744, 748 (Tex. Crim. App. 1994) (en banc). 
The trial court is also the sole trier of fact at a hearing on a motion to
suppress and we are not to disturb any finding supported by the record.  Flores
v. State, 871 S.W.2d 714, 721 (Tex. Crim. App. 1993) (en banc).








As a general rule, we afford almost
total deference to a trial court=s determination of the historical
facts the record supports, particularly when those factual findings are based
on an evaluation of the demeanor and credibility of witnesses.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc).  We afford this
same amount of deference to trial court rulings on application of law to fact
questions if the resolution of those questions turns on an evaluation of
demeanor and credibility of witnesses.  Id.  In reviewing a trial court=s ruling on a motion to suppress, we
review the evidence in the light most favorable to the trial court=s ruling.  Gutierrez v. State,
221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

Police officers may arrest someone
without an arrest warrant if that person is found in a suspicious place under
circumstances which reasonably show that he has been guilty of a breach of the
peace, or has threatened or is about to commit some offense against the laws of
this state.  Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2008). 
An officer may arrest without a warrant anyone who commits an offense in his
presence or within his view.  Id. art. 14.01(b) (Vernon 2005).

This statutory authorization to
arrest for an Aoffense against the public peace@ codifies an exigent circumstances
exception to the warrant requirement.  Miles v. State, 241 S.W.3d 28, 41
(Tex. Crim. App. 2007).  Exigent circumstances require an immediate arrest when
an offense that poses a continuing threat to the public peace is committed in
the presence or view of a police officer.  Id. at 42.

When the officers observing appellant
decided to arrest him for breach of the peace, the information leading them to
believe they had to act included the following: (1) appellant was believed to
carry a gun at all times; (2) appellant had a volatile personality and Awas known in the area for [his]
volatile and dangerous manner;@ (3) they personally observed appellant engaged in a heated
argument outside an apartment where Hassan and Hebert said he might be found;
and (4) appellant was a suspect in the capital murder of Joel Portillo.

During the hearing on appellant=s motions to suppress evidence,
Sergeant Belk testified regarding his observation of appellant breaching the
peace that required officers to arrest appellant.  Sergeant Binford also
testified during the suppression hearing that he witnessed appellant screaming,
yelling, arguing, and causing a disturbance that required the police to arrest
him for breach of the peace.








During trial, Hebert and Hassan
testified that they did not see anyone around appellant or witness him in a
confrontation just before officers approached him.  Both testified that they
were hiding at the moment appellant was arrested and did not witness the actual
arrest.  Officer Miller and Sergeants Belk and Binford testified during trial
that they saw appellant engaged in a heated argument at the top of an apartment
stairwell and arrested him for committing a breach of the peace.  Sergeant Belk
testified that appellant was arguing with two young males, while Sergeant
Binford testified that appellant was arguing with a middle-aged man about two
young males.

The trial court had exclusive
authority to evaluate the credibility of the testimony given regarding the
circumstances surrounding the breach of the peace for which appellant was
arrested.  See Johnson, 871 S.W.2d at 748.  The trial court acted within
its exclusive province in finding that the officers had a reasonable belief
that appellant was engaging in a breach of the peace that warranted his arrest,
and the record contains evidence to support that finding.  See Flores,
871 S.W.2d at 721.  Because the trial court observed the witnesses during their
testimony and based its findings and ruling on the motions to suppress on their
credibility, we show great deference to the trial court=s findings and ruling.  See Guzman,
955 S.W.2d at 89.

The trial court acted within its
discretion in concluding that appellant=s conduct posed an immediate and
continuing threat to the public peace and gave rise to a reasonable belief that
appellant had committed a breach of the peace.  See Miles, 241
S.W.3d at 41; see also Ste-Marie v. State, 32 S.W.3d 446, 449 (Tex. App.BHouston [14th Dist.] 2000, no pet.)
(evidence that appellant said to 10-year-old girl AHey, bitch, what are you looking at?@ sufficient to justify detention by
police).








Viewing this evidence in the light
most favorable to the trial court=s ruling, we cannot say that the
trial court abused its discretion in finding that appellant committed a breach
of the peace which led to his arrest.  See Gutierrez, 221 S.W.3d at
687.  Viewing the evidence in the light most favorable to the trial court=s ruling, we also cannot say that the
trial court abused its discretion in determining that appellant=s warrantless arrest was valid under
Articles 14.01(b) and 14.03(a)(1) of the Texas Code of Criminal Procedure.[2] 
See id.

We overrule appellant=s issue regarding admission of
evidence seized as a result of his warrantless arrest.

II.        Objections to State=s Closing Argument

Appellant contends that the trial
court committed reversible error when it overruled his objections to the State=s closing argument.  Specifically,
appellant argues on appeal that the State impermissibly injected victim impact
statements into its closing argument over appellant=s objections.

The four permissible areas of jury
argument are (1) summation of evidence; (2) reasonable deductions drawn from
the evidence; (3) answers to opposing counsel=s argument; and (4) pleas for law
enforcement.  Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App.
2000).  Even if a jury argument exceeds these permissible areas, it will not
constitute reversible error unless the argument is extreme or manifestly
improper, violates a mandatory statute, or injects new facts harmful to the
accused into the trial.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.
Crim. App. 2000) (en banc).

Appellant cites on appeal four
objections raised during the State=s closing argument.  Of these four
objections, the first asserted that the State was arguing facts not in evidence
and the fourth asserted improper jury argument.  An appellant=s issue on appeal must comport with
the objection made at trial; otherwise, the appellant has preserved nothing for
review.  See Tex. R. App. P. 33.1(a); Ibarra v. State, 11 S.W.3d
189, 197 (Tex. Crim. App. 1999).  Because appellant=s issue on appeal does not comport with
these two cited objections, appellant leaves us nothing to review with regard
to them.








The remaining two objections at trial
were based on appellant=s contention that certain portions of argument constituted
improper victim impact statements, which is the same argument raised on
appeal.  The trial court sustained one of these victim impact objections and
instructed the jury to disregard the challenged statement.  The trial court
then denied appellant=s motion for mistrial.  Appellant argues on appeal only that
error was committed in overruling his improper victim impact objections, not
that it was error to deny his motion for mistrial.  Therefore, appellant leaves
us nothing to review regarding this sustained objection.  See Tex. R.
App. P. 33.1(a).

Furthermore, even if appellant had
preserved for review the denial of his motion for mistrial, he failed to
demonstrate that he was harmed by such denial.  As a general rule, we presume
that the jury follows the trial court=s instructions in the manner
presented.  Thrift v. State, 176 S.W.3d 221, 224 (Tex. Crim. App.
2005).  This presumption may be rebutted by pointing to evidence that the jury
failed to follow the trial court=s instruction.  Id.  Because
appellant cites no evidence that the jury failed to follow the trial court=s instruction to disregard, he fails
to rebut the presumption that the jury followed the instruction and cannot show
that he was harmed by the trial court=s denial of his motion for mistrial.

We turn to the remaining victim
impact objection.  Appellant objected to the following assertion by the State: AThink about Mr. Portillo and his son
getting ready for work that day because they work.  They=re day laborers, basically, a landscaping
job.  They got a deal going where the son gets up and goes down and gets the
car ready and Mr. Portillo follows . . .@  Once appellant objected, the State
asserted that the statement was a summation of witness testimony.  The trial
court overruled appellant=s objection.

Summation of evidence is one of the
four permissible areas of jury argument.  Jackson, 17 S.W.3d at 673. 
The record in this case indicates that the statement quoted above is a
summation of approximately three pages of testimony from Jose Portillo admitted
without objection.  Therefore, the trial court did not err in overruling
appellant=s objection to this statement.








We overrule appellant=s issue regarding his objections to
the State=s closing argument.

Conclusion

The trial court=s judgment is affirmed.

 

/s/        William J. Boyce

Justice

 

 

Panel consists of Justices Frost,
Brown, and Boyce.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 









[1]           Appellant=s argument on appeal cites only testimony and evidence from the hearing
on his motions to suppress.  The State asserts that we should consider both the
testimony presented during that hearing and during the guilt-innocence stage of
trial in reviewing this issue because the parties consensually re-litigated the
validity of appellant=s arrest during the guilt-innocence stage of trial.  See
Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).  Because
the State=s assertion comports with the record and existing case
law, we agree and therefore consider testimony elicited during trial and during
the suppression hearing regarding the validity of appellant=s warrantless arrest.





[2]           The State also asserts that appellant=s arrest was legal under Article 14.04.  See
Tex. Code Crim. Proc. art. 14.04 (Vernon 2005).  The record indicates that the
trial court made no finding regarding the legality of appellant=s arrest under this statute, relying instead on
Articles 14.01(b) and 14.03(a)(1).  Because we resolve appellant=s issue on the grounds relied upon by the trial court,
we do not address Article 14.04 and express no opinion regarding this article=s applicability to appellant=s arrest.