

**NUMBER 13-11-00734-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANTHONY CLINE,                                                  Appellant,

**v.**

THE STATE OF TEXAS,                                              Appellee.

**On appeal from the 347th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Perkes
Memorandum Opinion by Justice Garza**

A jury convicted appellant, Anthony Cline, of sexual assault of A.G.,[1] a child, a

---

[1] We refer to the child victim by initials to protect her identity. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2011).

first-degree felony. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B), (e) (West Supp. 2011). Appellant pleaded "true" to the State's enhancement allegations that he is a habitual felony offender, and the trial court imposed punishment at twenty-five years' imprisonment. *See id.* § 12.42(d) (West Supp. 2011). By four issues, appellant contends: (1) the evidence is insufficient to establish that he digitally penetrated A.G.'s sexual organ; (2) the trial court erred in admitting the video recording of A.G.'s sexual assault interview; (3) the prosecutor engaged in improper jury argument; and (4) the prosecutor improperly commented on appellant's failure to call certain witnesses. We affirm.

## I. Background

A.G. was fifteen at the time of trial and was thirteen at the time of the alleged sexual assault. She testified that on July 1, 2010, appellant (her uncle), who lived in an apartment with his mother, invited her and her younger brother to the apartment for the evening.[2] A.G.'s younger brother declined the invitation, and appellant drove A.G. to the apartment. Although appellant's mother (A.G.'s grandmother) was at the apartment when they arrived, she later left for the night because she works night shifts as a nurse.

A.G. and appellant watched television in the living room of the apartment. A.G. commented that her back was hurting; appellant told A.G. to lay on the floor and offered to massage her back. During the massage, A.G. became uncomfortable when appellant brought his hands up under her stomach. A.G. left the room, picked up appellant's cell phone, and went into the bathroom for about thirty minutes. While in the bathroom, A.G. texted her friend, C.C., that she was scared. A.G. went back to the

---

[2] Evidence at trial established that appellant was thirty-seven years old at the time of the alleged assault.

living room. Appellant got some lotion and began massaging A.G.'s legs. Appellant continued to massage A.G.'s bare skin, moving from her legs to the upper part of her body. Appellant then began touching A.G.'s "vaginal area" with his hands. When the prosecutor asked if appellant touched her "inside" her vaginal area, A.G. responded, "[b]oth." The prosecutor again asked whether appellant "put his fingers inside of [her] vagina." A.G. stated, "No. He just stayed on the outside of it." A few moments later, A.G. said that appellant's fingers "felt like they were inside." A.G. told appellant to stop. She went to her grandmother's bedroom and spent the night there. A.G. did not tell her mother about the incident because she was scared and embarrassed. Several months later, A.G. told her mother by writing her a letter.

On cross-examination, A.G. testified that on the evening the incident occurred, her mother knew A.G. would be alone with appellant. A.G. also testified that she had some truancy problems at her school.

Ricardo Jimenez, a forensic interviewer with the Coastal Bend Children's Advocacy Center, testified that he conducted a recorded interview with A.G. Jimenez testified that A.G. was "a little emotional" and cried at certain points during the interview.

E.C., A.G.'s mother, testified that she learned of the incident in September 2010, two months after it occurred. One morning, A.G. locked herself in her room, refused to get ready for school, and eventually slipped a letter under the door telling E.C. about the incident. E.C. immediately called the police. A police officer came to the house and questioned A.G. about the incident. When the officer asked A.G. if appellant penetrated her vaginally, A.G. said that he had done so with his finger. During the questioning by the police officer, A.G. cried and kept her head down. E.C. stated that A.G.'s truancy

3

problems developed because A.G. sometimes missed school due to orthodontic appointments and failed to turn in the required excuses for the absences.

On cross-examination, E.C. stated that she limited appellant's visits to her house because he had a serious drug problem and would steal things from her to support his habit.

Appellant testified that A.G. and her younger brother frequently visited him at his mother's apartment, but he was never alone with A.G. because her brother was always around. Appellant denied that he gave A.G. a massage or that he sexually assaulted her.

## II. Sufficiency of Evidence of Penetration

By his first issue, appellant contends that there is insufficient evidence that he penetrated A.G.'s sexual organ with his finger. Appellant points to A.G.'s inconsistent testimony that he did not put his fingers inside her vagina, that he "both" touched her inside her vaginal area, and that his fingers "felt like they were inside."

### A. Standard of Review and Applicable Law

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary insufficiency under "a rigorous and proper application of

4

the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99. The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

The court of criminal appeals has stated that:

penetration occurs when there is "tactile contact beneath the fold of complainant's external genitalia," and that it is not inaccurate "to describe [conduct] as a penetration, so long as [the] contact with [the complainant's] anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips." In *Vernon*, the defendant was charged with and convicted of aggravated sexual assault

5

of his thirteen-year-old step-daughter. The Second Court of Appeals affirmed the defendant's conviction, in spite of testimony by the complainant that the defendant had only touched the "outside" of her vaginal area. In affirming the court of appeals, this Court noted that the statute does not criminalize penetration of the vagina, but the broader conduct of "penetration of the . . . sexual organ" of the child. We went further to say that "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact[,]" and therefore constitutes penetration in the context of sexual assault.

*Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) (internal citations and quotations omitted); *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992).

Child victims of sexual assault are afforded great latitude when testifying. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990); *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). The uncorroborated testimony of a child victim is alone sufficient to support a conviction for aggravated sexual assault. *Hiatt*, 319 S.W.3d at 121.

### B. Discussion

A.G. testified, in relevant part, as follows:

Q [Prosecutor]: Now, when the Defendant is touching you, [A.G.], is he touching you inside of your vaginal area?

A [A.G.]: Both.

Q: What do you mean both?

A: Like he was—ugh.

. . . .

Q: Did he put his fingers inside of your vagina?

A: No. He just stayed on the outside of it.

Q: Okay. Earlier you said it was both. What did you mean by that?

6

A:        Well, like he wouldn't really inside of it [sic], but he was still touching it like—like how do I explain?

. . . .

Q:        But when he touched you, did you feel like his fingers were inside?

A:        They felt like they were inside.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that A.G.'s testimony, although ambiguous and arguably contradictory, was legally sufficient for a rational fact finder to find that appellant's fingers penetrated A.G.'s female sexual organ. There is no requirement that the victim be able to testify as to "penetration" per se. *Villalon*, 791 S.W.2d at 133; *Zuniga v. State*, 811 S.W.2d 177, 179–80 (Tex. App.—San Antonio 1991, no pet.) (child victim need not testify in terms of statutory language, but may use unsophisticated language to describe sexual assault in manner sufficient to sustain conviction). The jury, as the trier of fact, was free to draw reasonable inferences from A.G.'s testimony, including that "both" meant that appellant touched her both on the inside and outside of her vaginal area. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) (stating the jury, as the trier of fact, may draw reasonable inferences from the facts). Moreover, it is the exclusive province of the jury to reconcile conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). We overrule appellant's first issue.

### III. ADMISSION OF SEXUAL ASSAULT INTERVIEW

By his second issue, appellant contends the trial court erred in admitting the video recording of A.G.'s sexual assault interview under the rule of optional completeness. *See* TEX. R. EVID. 107. The State argues that the trial court did not

7

abuse its discretion in admitting the videotaped interview, and even if it had, any such error was harmless because the same evidence was introduced without objection through other testimony.  *See* TEX. R. APP. P. 44.2(b).

## A.      Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2011). We may not reverse the judgment if the trial court's decision is within the zone of reasonable disagreement.  *Id.*

> Texas Rule of Evidence 107, the rule of optional completeness, states:
>
> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between same parties may be given.

TEX. R. EVID. 107.  The rule's purpose is to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing.  *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011); *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.).   If defense counsel pursues a subject that would ordinarily be outside the realm of proper comment by the prosecutor, the defendant opens the door and creates a right of reply for the State.  *Tovar*, 221 S.W.3d at 190. Thus, under the rule of optional completeness, the State is entitled to admission of the portions of a complainant's videotaped statement when:  (1) defense counsel asks questions concerning some of the complainant's statements on the videotape; (2) defense counsel's questions leave the possibility of the jury receiving a

8

false impression from hearing only a part of the conversation, with statements taken out of context; and (3) the videotape is necessary for the conversation to be fully understood. *Id.* at 190–91. Rule 107 is not invoked by the mere reference to a document, statement, or act, but rather, the omitted portion of the statement must be "on the same subject" and must be "necessary to make it fully understood." *Pena,* 353 S.W.3d at 814 (quoting *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004)).

Under Rule of Appellate Procedure 44.2(b), a non-constitutional error not affecting a defendant's substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Sauceda v. State*, 162 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (op. on remand). A substantial right is affected if: "(1) the error had a 'substantial and injurious' effect or influence in determining the jury's verdict or (2) leaves one in grave doubt whether it had such an effect." *Id.* (quoting *Davis v. State*, 22 S.W.3d 8, 12 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). In conducting our analysis, we are to consider the entire record, including all evidence admitted, the nature of the evidence in favor of the verdict, and "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* (quoting *Arroyo v. State*, 123 S.W.3d 517, 520 (Tex. App.—San Antonio 2003, pet. ref'd)). We may also consider other factors, such as the jury instructions, theories of the parties, closing arguments, voir dire, and whether the State emphasized the error. *Id.*

## B. Discussion

During the State's direct examination of Jimenez, the following discussion occurred at a bench conference:

9

| [Prosecutor]: | I'm gonna be offering—I'm gonna be offering the video into evidence, at this point, under the Rule 107 of optional completeness. Counsel had asked questions regarding statements that were made of that child in that interview with Mr. Jimenez. I believe he's opened the door under Rule 107 and we're gonna offer it under that exception. |
|---|---|
| [Court]: | How did he open the door? |
| [Prosecutor]: | Pursuant to *Tovar v. State*, Judge, if counsel asks questions regarding specific statements made in an interview, then that would open up the door to the entire interview under the Rule of Optional Completeness. He did throughout this process ask the mom and the detective of the statements that she made, specifically, during that interview that the State did not elicit testimony. |
| [Defense counsel]: | She did not deny those statements. She said that she did, in fact, make those statements. I don't think we need extrinsic evidence. She made those statements. She acknowledged that she made those statements and so that's not in dispute. |
| [Prosecutor]: | It doesn't have to be in dispute. |
| [Court]: | I'm sorry? |
| [Prosecutor]: | It does not have to be in dispute. It's just the fact that he elicited partial testimony of the interview, and without the entire interview. Now, he's opened the door to having that entire interview and all of its contents being played for the jury. |
| [Court]: | Okay. Very well. Objection overruled. |

The prosecutor argued that defense counsel opened the door during his cross-examination of E.C. and Detective Daniel Rodriguez, the police officer assigned to investigate the case.[3] During defense counsel's cross-examination of Detective Rodriguez, the following exchange occurred:

---

[3] We have reviewed defense counsel's cross-examination of E.C.; defense counsel did not ask

10

Q [Defense counsel]: Okay. You were aware, from the interview, that [A.G.] was having issues at school and truancy problems; is that correct?

A [Rodriguez]: Correct.

Q: Okay. And that was before any alleged incident took place; is that correct?

A: Yes.

Q: Okay. Now, during the interview of the child at the advocacy center, did you have any other follow-up questions; how do you go about that?

A: Follow up questions with the child?

Q: Yes.

A: If that occurs, then we typically have to bring them back to the advocacy center.

. . . .

Q: Are you aware that on the video [A.G.] mentions a [C.C.] and gives a phone number for that witness?

A: Yes, I do.

Q: And you never followed up on that either?

A: I did not.

Assuming, without deciding, that the trial court abused its discretion in admitting the videotape, we conclude that appellant cannot show that its admission was harmful because A.G. provided the same account in her trial testimony: that appellant touched her "both" on the inside and outside of her vaginal area.[4] Appellant argues that he was harmed by admission of the videotaped interview because "A.G. was effectively allowed

E.C. any questions regarding A.G.'s videotaped interview.

[4] In the interview, A.G. identified where appellant touched her as her "uterus." At trial, she clarified that by "uterus," she meant her vaginal area.

11

to testify twice during the trial," which permitted the State to "improperly bolster" her testimony.  We disagree that appellant was harmed by the admission of evidence that was cumulative of other evidence—in this case, A.G.'s trial testimony.  *See Mick v. State*, 256 S.W.3d 828, 832 (Tex. App.—Texarkana 2008, no pet.) (holding that admission of videotape statement of child sexual assault victim was harmless because it was cumulative of victim's trial testimony); *Jensen v. State*, 66 S.W.3d 528, 535–36 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (same).  We overrule appellant's second issue.

## IV. PREJUDICIAL JURY ARGUMENT

By his third and fourth issues, appellant contends that the prosecutor engaged in improper jury argument during its closing argument.  By his third issue, appellant complains that the "prosecutor improperly asked how the community could ever protect children like A.G. if the jury did not make the decision to convict the appellant."  Specifically, the prosecutor argued that if the jury was unwilling to convict appellant solely on A.G.'s testimony, it should render a verdict of not guilty.

By his fourth issue, appellant contends the prosecutor improperly commented on appellant's failure to contradict the State's evidence.  Specifically, the prosecutor improperly commented that the State would have welcomed the testimony of A.G.'s friend, C.C., and that the defense had "equal subpoena power as the State."  The State responds that with regard to both issues, appellant failed to preserve any issue for review.  We agree.

To preserve improper jury argument for appellate review, a defendant must object and pursue the objection to an adverse ruling.  *Benn v. State*, 110 S.W.3d 645,

12

650 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Flores v. State*, 871 S.W.2d 714, 722-23 (Tex. Crim. App. 1993) (noting also that "where an adverse ruling is not obtained, nothing is preserved for review")).  Otherwise, he forfeits his right to complain about the argument on appeal.  *Id.*

Here, with respect to the prosecutor's comment that the jurors should render a not-guilty verdict if they were unwilling to rely solely on A.G.'s testimony, defense counsel objected on the basis of "improper argument," and the trial court sustained the objection.  Defense counsel did not, however, pursue his objection to an adverse ruling. *See id.*  With regard to the prosecutor's comment regarding the fact that A.G.'s friend was not contacted, defense counsel objected and the trial court responded, "All right. Very well."  Defense counsel did not further pursue the objection.  Similarly, defense counsel objected to the prosecutor's comment that the defense could have subpoenaed witnesses, and the trial court sustained the objection.  Defense counsel did not pursue the objection to an adverse ruling.  Accordingly, appellant failed to preserve any issue regarding improper jury argument.  *See id.*  We overrule appellant's third and fourth issues.

## V. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of January, 2013.

13